UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

STACY BUTLER DAWSON,

        Plaintiff,

v.                                          CIVIL NO. SA-15-CV-761-PM

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

        Defendant.

## MEMORANDUM DECISION AND ORDER

Pursuant to the consent of the parties in the above-styled and numbered cause of action to trial by the undersigned United States Magistrate Judge,[1] and consistent with the authority vested in the United States Magistrate Judges under the provisions of 28 U.S.C. § 636(c)(1) and Appendix C, Rule 1(i) of the Local Rules for the Assignment of Duties to United States Magistrate Judges in the Western District of Texas, the following memorandum decision and order is entered.

## I.  JURISDICTION

The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  ADMINISTRATIVE PROCEEDINGS

This is an action to review a decision of the Commissioner of the Social Security Administration under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).  Plaintiff Stacy Butler Dawson initiated this action pursuant to 42 U.S.C. § 405(g) seeking review of the determination of Carolyn W. Colvin, the acting Commissioner of the Social Security

---

[1] Docket nos. 11, 14, 15.

Administration, that plaintiff is not disabled and not entitled to receive disability insurance benefits ("DIB").

Plaintiff filed an application for Title II DIB on October 14, 2014, alleging disability since August 29, 2013.[2]  The Social Security Administration ("SSA") denied DIB initially on November 20, 2014, and upon reconsideration on January 8, 2015.[3]  On April 14, 2015, Frederick Gatzke, an administrative law judge ("ALJ"), held a hearing and considered plaintiff's claims *de novo*.[4]  Plaintiff was represented by an attorney at the hearing, and the ALJ received testimony from plaintiff as well as from vocational expert Robert Grant ("VE").[5]  The ALJ issued a written opinion on April 29, 2015, denying benefits and finding that plaintiff had not been disabled from August 29, 2013 through the date of the decision.[6]  Plaintiff requested Appeals Council review of the ALJ's decision, and on July 6, 2015, the Council concluded that no basis existed to grant review.[7]  Thus, the ALJ's determination became the final decision of the Commissioner.  Plaintiff now appeals that determination.

---

[2]  Transcript ("TR") at 157-160.

[3]  Id. at 84-88, 91-93.

[4]  Id. at 40-59.

[5]  Id. at 42-58.

[6]  Id. at 22-33.

[7]  Id. at 1-5.

### III.  ISSUES

1.      Whether substantial evidence supports the ALJ's decision that plaintiff was not disabled under the Social Security Act.

2.      Whether the decision comports with relevant legal standards.

### IV.  STANDARD OF REVIEW

In reviewing the Commissioner's decision, the Court is limited to a determination of whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards in evaluating the evidence.[8]  Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[9]  It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence.[10]

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.[11]  "The court does not re-weigh the evidence in the record, try the issues *de novo*, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision."[12]  Conflicts in the evidence are for the Commissioner to resolve.[13]

---

[8]  Boyd v. Apfel, 239 F.3d 698, 704 (5th Cir. 2001).

[9]  Id.

[10]  Abshire v. Bowen, 848 F.2d 638, 640 (5th Cir. 1988).

[11]  Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

[12]  Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000).

[13]  Id.

Four elements of proof are weighed in determining if substantial evidence supports the Commissioner's determination:  (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[14]

## V.  ALJ'S FINDINGS AND PLAINTIFF'S CONTENTIONS

**A.      Summary of the ALJ's Decision**

The ALJ stated the issue was whether plaintiff was disabled pursuant to sections 216(i) and 223(d) of the Social Security Act.[15]  The ALJ defined disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, or combination of impairments, that could be expected to result in death, or that has lasted, or can be expected to last, for a continuous period of not less than twelve months.[16]  The ALJ stated there was an additional issue with respect to plaintiff's claim for a period of disability – whether the insured status requirements of sections 216(i) and 223 were met.[17]  The ALJ found plaintiff's earnings record showed plaintiff had acquired sufficient quarters of coverage to remain insured through December 31, 2018.[18]  Thus, according to the ALJ, plaintiff needed to establish disability on or before that date to be entitled to a period of disability and DIB.[19]

---

[14]  Martinez, 64 F.3d at 174.

[15]  TR at 22.

[16]  Id.

[17]  Id.

[18]  Id.

[19]  Id.

The ALJ next explained the five-step sequential evaluation process for determining whether an individual is disabled, and noted that the steps are to be followed in order.[20]  The ALJ then analyzed whether plaintiff met the criteria for disability pursuant to these steps and made findings of facts and conclusions of law.[21]

**Step 1 findings**.  The ALJ determined plaintiff had not engaged in substantial gainful activity since the alleged onset date of August 29, 2013.[22]  The ALJ stated "claimant's earnings record shows that she earned $13,716 in the first quarter of 2014; however, it appears these are part of claimant's distributions from her military retirement."[23]

**Step 2 findings.**  The ALJ found plaintiff had the severe impairments of cervical degenerative joint disease, headaches, and an affective disorder with depression.[24]  The ALJ stated "the evidence of record shows that claimant has hypertension that is controlled with medications"[25] and "since claimant's hypertension did not significantly limit her physical ability to perform work or related activities it was determined by the [ALJ], that hypertension was a

---

[20]  Id. at 23-24 (citing 20 C.F.R. §§ 404.1509, 404.1512(g), 404.1520(a)-(g), 404.1521, 404.1525, 404.1526, 404.1545, 404.1560(b) and (c), 404.1565, 404.1572(a) and (b), 404.1574, 404.1575 and Social Security Rulings ("SSR") 85-28, 96-3p, 96-4p, 96-8p).

[21]  Id. at 24-33.

[22]  Id. at 17 (citing 20 C.F.R. § 404.1571, *et seq*.).

[23]  Id. at 24 (citing Ex. B3D2).

[24]  Id. (citing 20 C.F.R. § 404.1520(c)).

[25]  Id. (citing Ex. B8F31).

'non-severe' impairment"[26] and the ALJ was "not addressing the impairments in [its] decision."[27]

**Step 3 findings**.   The ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in "20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526)."[28]   The ALJ expressly considered listing 1.02B, stating "there is no evidence of involvement of one major peripheral joint in each upper extremity" "resulting in an inability to perform fine and gross movement effective[ly], as defined in 1.00B2c."[29]

The ALJ also stated "[t]here is no specific listing for migraine headaches, but the claimant's medical records do[] not document any neurological deficits related to the headaches" and "her medical treatment notes indicate she is fully oriented to time, place, and person."[30]   The ALJ concluded, "[i]n short, the record does not document persisting impairments from the migraine headaches that equals any listed impairment."[31]

The ALJ found the "severity of the claimant's mental impairment does not meet or medically equal the criteria of listing 12.04."[32]   The ALJ stated it "considered whether the 'paragraph B' criteria were satisfied," and to "satisfy the 'paragraph B' criteria, the mental

---

[26]   Id. (citing 20 C.F.R. 416.921 and SSR 96-3p).

[27]   Id. at 24.

[28]   Id. at 25.

[29]   Id.

[30]   Id.

[31]   Id.

[32]   Id.

impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration."[33]  The ALJ determined "[i]n activities of daily living, the claimant has no restriction," "[i]n social functioning, the claimant has *mild* difficulties," and "with regard to concentration, persistence or pace, the claimant has *mild* difficulties."[34]  The ALJ stated the "claimant has not experienced any episode of decompensation, each of extended duration."[35]  The ALJ found "[b]ecause the claimant's mental impairment does not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria are not satisfied."[36]  The ALJ also found "the evidence fails to establish the presence of the 'paragraph C' criteria."[37]

The ALJ noted "the limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process" and "the mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph

---

[33]  Id.

[34]  Id. (emphasis in original).

[35]  Id.

[36]  Id.

[37]  Id. at 26.

B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p)."[38]

The ALJ concluded "the following residual functional capacity assessment reflects the degree of

limitation the undersigned has found in the 'paragraph B' mental functional analysis."[39]

**Residual functional capacity finding.**  Having determined that plaintiff suffered from

severe impairments that did not meet or equal a listed impairment, and before considering step 4,

the ALJ proceeded to assess plaintiff's RFC.[40]  The ALJ stated that he had considered all of

plaintiff's symptoms and the extent to which her symptoms could "reasonably be accepted as

consistent with the objective medical evidence and other evidence, based on the requirements of

20 C.F.R. § 404.1529 and SSRs 96-4p and 96-7p."[41]  The ALJ confirmed that he had considered

the opinion evidence, as required by 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-

3p.[42]  The ALJ also indicated that he had used the two-step process applicable to RFC

determinations.[43]  Under that process, the ALJ must first determine "whether there is an

underlying medically determinable physical or mental impairment(s) . . . that could reasonably be

expected to produce the claimant's pain or other symptoms."[44]  Second, the ALJ "must evaluate

the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent

---

[38] Id.

[39] Id.

[40] Id. at 26-32.

[41] Id. at 26.

[42] Id.

[43] Id.

[44] Id.

to which they limit the claimant's functioning."[45]  The ALJ noted that "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence," the ALJ "must make a finding on the credibility of the statements based on a consideration of the entire case record."[46]

The ALJ assessed plaintiff with the following RFC:

> [C]laimant has the [RFC] to lift and carry 20 pounds occasionally, and 10 pounds frequently; stand and walk 6 hours in an 8-hour workday; sit briefly for a few minutes (every 45 minutes to an hour); occasional stopping, crouching and kneeling; and no more than frequent reaching and handling.  Additionally, claimant is limited to detailed, but not complex work (20 CFR § 404.1567(b)).[47]

In support of this assessment, the ALJ first considered plaintiff's testimony that: "she is 49 years old with some college hours;" "she last worked on January 16, 2015 as a Supply Sergeant for the Army;" and "she stopped working due to neck pain, back pain, anxiety and depression related to PTSD."[48]  The ALJ next considered plaintiff's testimony that she: "is supposed to start real estate classes in June;" "is currently receiving unemployment benefits;" "started vocational rehab in November;" "has been going to job fairs and has been applying for jobs as a contractor, marketing, data entry and real estate;" and "would have taken a job if one had been offered to her and she would have stayed in the Army if they had [not] boarded her out."[49]  The ALJ also considered plaintiff's testimony that she: "has chronic pain in the neck and back and cannot sit or

---

[45] Id. at 26-27.

[46] Id. at 27.

[47] Id. at 26.

[48] Id. at 27.

[49] Id.

9

stand for longer than 30 minutes;" "has had neck surgery and was recommended to have a lower back fusion;" "has had injections with numbing for about three months and has tried different medications;" "rated her pain at 7/10 to the lumbar area;" "has migraines about 3-4 times a week," during which "she stays in a darkened room and turns off any sounds;" "had right hip surgery and she cannot walk for long distances;" and "has incontinence."[50]  The ALJ considered plaintiff's testimony that she "stated she is not sure that she could maintain work."[51]  The ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."[52]

The ALJ's decision includes detailed findings discussing claimant's cervical degenerative joint disease.[53]  These findings have not been challenged by plaintiff.[54]  The ALJ concluded "[d]espite the relatively serious problems reported by the claimant, consulting physicians did not observe any particular difficulties getting about or functioning during the examinations" and "[t]he record does not contain any opinions from treating or examining physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision."[55]  Further, the ALJ determined "[g]iving the claimant the benefit of the doubt, the undersigned has

---

[50]  Id.

[51]  Id.

[52]  Id.

[53]  Id. at 27-30.

[54]  Docket no. 16.

[55]  TR at 30.

taken claimant's complaints and has limited her to sitting briefly for a few minutes (every 45 minutes to an hour); occasional stooping, crouching and kneeling, and to no more than frequent reaching and handling."[56]

The ALJ's decision includes detailed findings discussing claimant's affective disorder with depression.[57]  These findings have not been challenged by plaintiff.[58]  The ALJ concluded "[c]laimant's depression has also been considered and the undersigned has limited the claimant to detailed, but not complex work."[59]  The ALJ determined "the claimant has been prescribed and has taken appropriate medications for depression, which weights in the claimant's favor with the medical records revealing that the medications have been relatively effective in controlling the claimant's symptoms."[60]  The ALJ stated "[t]he record indicates no significant reactions or side effects to the claimant's prescriptive treatments" and "there is no indication the claimant has required any emergency room treatment or inpatient hospitalization for any mental health problem [or] any mental health counseling or therapy."[61]

The ALJ's decision includes the following findings regarding claimant's headaches: (1) claimant testified she "has migraines about 3-4 times a week; she stays in a darkened room and

---

[56] Id.

[57] Id. at 30-31.

[58] Docket no. 16.

[59] TR at 31.

[60] Id. (citing Ex. 11F3, 8).

[61] Id.

turns off any sounds;" and "she is not sure she could maintain work;"[62] (2) claimant saw Vudhi Slabisak, M.D. on September 24, 2013 and reported "[s]he had tenderness over the lumbar vertebra and over the thoracic vertebra" and "the pain was causing headaches and was interfering with her job duties;"[63] and (3) claimant was seen by clinician David Ellis on September 17, 2014 "for headache, back pain, neck pain, hip pain, and foot pain," and "was assessed with cervical spondylosis and migraine headaches."[64]

The ALJ considered that claimant was awarded disability through the VA: (1) 20% disability "for degenerative arthritis of the cervical spine with cervical strain and herniated cervical disc; status post ACDF of C4-C6 and cervical keloid;" (2) "10% disability for gastroesophageal reflux disease with ulcers;" (3) "10% for left lower extremity radiculopathy diagnosed as left lateral recess stenosis;" and (4) "10% disability for an adjustment disorder with mixed anxiety and depressed mood."[65]  The ALJ stated that "a determination made by another agency that an individual is disabled is not binding on the Administration"[66] and found "that the medical evidence and other evidence do not support the claimant's allegations as credible."[67]

The ALJ also considered opinion evidence.[68]  The ALJ "accorded less weight to the

---

[62]  TR at 27.

[63]  Id. at 27-28.

[64]  Id. at 30.

[65]  Id. at 31 (citing Ex. B6F3).

[66]  Id.

[67]  Id. at 31-32.

[68]  Id. at 32.

residual functional assessment by Leigh McCary, M.D., who concluded the claimant's affective

disorders were non-severe."[69]  The ALJ determined the evidence at the hearing showed

claimant's "impairments caused more than a minimal functional limitation."[70]  The ALJ did give

"some weight to Dr. McCary['s] assessment that claimant could perform light work; however the

undersigned has placed some limitations on claimant functioning."[71]  The ALJ also considered

the opinion of state agency physician Brian Harper, M.D., who "also concluded that claimant

could perform light work."[72]

**Step 4 findings**.  The ALJ determined plaintiff "is unable to perform any past relevant

work (20 CFR 404.1565)."[73]  The VE testified plaintiff had past relevant work as a home health

aide, "classified by the Dictionary of Occupational Titles as a medium, Specific Vocational

Preparation ("SVP") 3 job;" dining room attendant, classified as a medium, SVP 2 job; bus

driver, classified as a medium, SVP 4 job, and stock clerk, classified as a heavy, SVP 4 job.[74]

**Step 5 findings**.  At step five, the ALJ stated that plaintiff was born on October 27, 1965,

and was 47 years old, which is defined as a younger individual age 18-49, on the alleged

disability onset date.[75]  He noted that plaintiff has "at least a high school education with some

---

[69]  Id.

[70]  Id.

[71]  Id. (citing Ex. B1A).

[72]  Id. (citing Ex. B3A).

[73]  Id. at 32.

[74]  Id.

[75]  Id. (citing 20 C.F.R. § 404.1563).

college hours," and plaintiff is able to communicate in English.[76]  The ALJ stated that transferability of job skills was "not material" because "applying the Medical-Vocational Rules as a framework supports a finding of 'not disabled,' whether or not the claimant has transferable job skills."[77]  Considering plaintiff's age, education, work experience, and RFC, the ALJ determined "there are jobs that exist in significant numbers in the national economy that the claimant can perform."[78]

The ALJ noted that, in determining whether plaintiff could make a successful adjustment to other work, he was required to consider plaintiff's RFC, age, education, and work experience "in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Appendix 2."[79]  The ALJ further explained if the plaintiff had the RFC to perform the full range of light work, "a finding of 'not disabled' would be directed by Medical -Vocational Rule 202.21."[80]  But, the ALJ found "the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations."[81]  The ALJ heard testimony from the VE that claimant "would be able to perform the requirements of representative occupations such as a parking lot attendant" and a garment tag stringer, jobs

---

[76]  Id. (citing 20 C.F.R. § 404.1564).

[77]  Id. (citing SSR 82-41; 20 C.F.R. Part 404, Subpart P, Appendix 2).

[78]  Id. (citing 20 C.F.R. §§ 404.1569, and 404.1569(a)).

[79]  Id. at 32.

[80]  Id. at 33.

[81]  Id.

14

"classified by the Dictionary of Occupational Titles as light, SVP 2 type jobs."[82]  The ALJ

determined "[p]ursuant to SSR 00-4p, the undersigned has determined that the vocational

expert's testimony is consistent with the information contained in the *Dictionary of Occupational*

*Titles*."[83]  Accordingly, the ALJ found that plaintiff had not been under a disability, as defined by

the Social Security Act, from August 29, 2013, through the date of the decision,[84] and was "not

disabled under sections 216(i) and 223(d) of the Social Security Act."[85]

## B.     Plaintiff's Claim

On January 12, 2016, plaintiff filed a brief seeking review of the Commissioner's

decision and asking the Court to reverse and remand to the Commissioner for further

proceedings.[86]  Plaintiff argues "[d]espite the finding that Plaintiff's migraine headaches are a

'severe impairment,' the ALJ failed to consider any related medical listing at step 3, and included

no headache-related limitations in the RFC, in clear contravention of unambiguous Agency

policy."[87]  On February 19, 2015, the Commissioner filed a responsive brief, arguing, in sum, that

the ALJ's decision is supported by substantial evidence.[88]

---

[82]  Id.

[83]  Id.

[84]  Id. (citing 20 C.F.R. § 404.1520(g)).

[85]  Id.

[86]  Docket no. 16.

[87]  Id. at 8.

[88]  Docket no. 18.

## VI.  ARGUMENTS and CONCLUSIONS OF LAW

In this section the Court will discuss in greater detail the applicable legal standards before applying those standards to plaintiff's specific claims as raised in her brief.

**A.      Entitlement to Benefits**

Every individual who is insured for disability insurance benefits, has not attained retirement age, has filed an application for benefits, and is under a disability is entitled to receive disability insurance benefits.[89]  Each aged, blind or disabled individual who meets certain income and resources limitations is entitled to receive supplemental security income.[90]  The term "disabled" or "disability" means the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months.[91]  A person shall be determined to be under a disability only if her physical or mental impairment or impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work existing in significant numbers in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for her, or whether she would be hired if she applied for work.[92]

_____

[89]  42 U.S.C. § 423(a)(1).

[90]  Id. § 1382(a).

[91]  Id. § 1382c(a)(3)(A).

[92]  Id. § 1382c(a)(3)(B).

**B.**     **Evaluation Process and Burden of Proof**

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[93] A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[94] The first step involves determining whether the claimant is currently engaged in substantial gainful activity. If so, the claimant will be found not disabled regardless of her medical condition or her age, education, and work experience. The second step involves determining whether the claimant's impairment is severe. If it is not severe, the claimant is deemed not disabled. In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments. If it meets or equals a listed impairment, the claimant is deemed disabled without considering her age, education, and work experience. If the impairment does not meet or equal a listed impairment, the Commissioner, in the fourth step, reviews the claimant's RFC and the demands of her past work. If she can still do this kind of work, she is not disabled. If she cannot perform her past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given her residual capacities and her age, education, and work experience, to do other work. If she cannot do other work, she will be found to be disabled. The claimant bears the burden of proof at the first four steps of the sequential analysis.[95] Once she has shown that she is unable to perform her previous work, the burden shifts to the Commissioner to show that

---

[93] 20 C.F.R. §§ 404.1520 and 416.920.

[94] Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

[95] Id.

17

there is other substantial gainful employment available that claimant is capable of performing.[96]

If the Commissioner adequately points to potential alternative employment, the burden then

shifts back to the claimant to prove that she is unable to perform the alternative work.[97]

**C.     Plaintiff's Claim in Appealing the ALJ's Decision**

Plaintiff argues "[d]espite finding that Plaintiff's migraine headaches are a 'severe

impairment,' the ALJ failed to consider any related medical listing at step 3, and included no

headache-related limitations in the RFC, in clear contravention of unambiguous Agency

policy."[98]  Specifically, plaintiff asserts the ALJ should have applied Listing 11.03, which "is

most analogous to the consideration of headaches because of its consideration of 'alteration of

awareness or loss of consciousness' and/or 'significant interference with activity during the

day.'"[99]  In response, the Commissioner asserts that "the ALJ correctly determined that Plaintiff

did not satisfy all the specified criteria of any Listing" and even if "the ALJ should have

specifically cited Listing 11.03, any such omission cannot be harmful in light of the absence of

medical evidence that could satisfy Plaintiff's burden to present evidence of disabling limitations

during the time period in question."[100]

At step three, the regulatory test for disability is met if a claimant's impairments fully

satisfy the severity criteria for an impairment listed in Appendix 1 to Subpart P of Part 404 of the

---

[96]   Anderson v. Sullivan, 887 F.2d 630, 632 (5th Cir. 1989).

[97]   Id. at 632-33.

[98]   Docket no. 16 at 8.

[99]   Id. at 10.

[100]   Docket no. 17 at 5.

regulations.[101]  If the claimant's impairment or combination of impairments meets or equals a

listed impairment and meets the duration requirement, the disability inquiry ends, and the

claimant is entitled to benefits.[102]  If the claimant's impairment is unlisted, to equal a listing, the

claimant's unlisted impairment must be "at least equal in severity and duration to the criteria of

any listed impairment."[103]  The claimant shows that her unlisted impairment is medically

"equivalent" to a listed impairment by presenting medical findings equal in severity to all the

criteria for the most analogous listed impairment.[104]

    The ALJ is required to "discuss the evidence offered in support of [a claimant's] claim

for disability and to explain why [the ALJ] found [the claimant] not be disabled at that step."[105]

In Audler v. Astrue, the Fifth Circuit vacated and remanded an ALJ decision which failed to

explain why a claimant's impairment did not meet or equal the criteria of a listed impairment at

step three.[106]  The ALJ's step three finding was confined to one sentence:

> The medical evidence indicates that the claimant has status post lumbar
> laminectomy, cervical disc herniation, headaches and chronic neck and back pain,

---

[101]  20 C.F.R. § 404.1520(a)(4)(iii).

[102]  20 C.F.R. § 404.1520(d).

[103]  20 C.F.R. § 404.1526(a).

[104]  20 C.F.R. § 404.1526(b)(2) ("If you have an impairment(s) that is not described in appendix 1, [The Social Security Administration] will compare [the claimant's] findings with those for closely analogous listed impairments.  If the findings related to your impairment(s) are at least of equal medical significance to those of a listed impairment, [The Social Security Administration] will find that [the claimant's] impairment(s) is medically equivalent to the analogous listing"); Sullivan v. Zebley, 493 U.S. 521, 529–31, 110 S.Ct. 885 (1990).

[105]  Audler v. Astrue, 501 F.3d 446, 448 (5th Cir. 2007) (citing 42 U.S.C. § 405(b)(1)).

[106]  501 F.3d 446 (5th Cir. 2007).

impairments that are severe within the meaning of the Regulations but not severe
enough to meet or medically equal one of the impairments listed in Appendix 1,
Subpart P, Regulations No. 4.[107]

The Fifth Circuit stated "[t]he ALJ did not identify the listed impairment for which Audler's
symptoms fail to qualify, nor did she provide any explanation as to how she reached the
conclusion that Audler's symptoms are insufficiently sever to meet any listed impairment."[108]
The Fifth Circuit found that such "a bare conclusion" was "beyond meaningful judicial review,"
and violated "the explicit provision of the Social Security Act requiring the ALJ to discuss the
evidence in support of a disability claim and explain the reasons for denial."[109]

Here, the ALJ's step three analysis was incomplete.  The ALJ determined at step two that
claimant's migraine headaches were a "severe impairment."[110]  At step three, the ALJ was
required to determine if claimant's migraine headaches met or equaled a listed impairment.[111]
The ALJ and plaintiff both state there is no specific listing for migraine headaches.[112]  Because
there is no listing for migraine headaches, the ALJ was required to compare his findings with

---

[107]  Id. at 448.

[108]  Id.

[109]  Id. (citing Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996); 42 U.S.C.
§ 405(b)(1)).

[110]  TR at 24.

[111]  20 C.F.R. § 404.1520(d).

[112]  TR at 25; Docket no. 16 at 9.  Defendant does not explicitly state there is no specific
listing for migraines, but does not contest plaintiff's representation there is no listing for
migraines, argument that when there is no listing, the ALJ must apply the most analogous listing,
or contention that Listing 11.03 is the most analogous listing.  See docket no. 17 at 4.

those of a "closely analogous listed impairment[]."[113]  But, in discussing claimant's headaches, the ALJ failed to evaluate plaintiff's headaches in relation to any specified listing.[114]  The ALJ stated "[t]here is no specific listing for migraine headaches, but the claimant's medical records does not document any neurological deficits related to the headaches.  Further, her medical treatment notes indicate she is fully oriented to time, place, and person."[115]  The ALJ then concluded, "[i]n short, the record does not document persisting impairments from the migraine headaches that equals any listed impairment."[116]  As in Audler, the ALJ provided only a cursory step three analysis of claimant's headaches.  The ALJ did not identify a listing for which claimant's symptoms failed to qualify, and thus, could not determine whether the impairment met or medically equaled the severity of a listed impairment.[117]  Therefore, the ALJ's statement that "the record does not document persisting impairments from the migraine headaches that equals any listed impairment" was conclusory.[118]  Consequently, as in Audler, the ALJ's findings at step three are too conclusory to be susceptible to meaningful review.[119]

Plaintiff contends claimant's headaches should be analyzed pursuant to Listing 11.03, as

---

[113]  C.F.R. 20 § 404.1526(b)(2).

[114]  TR at 25.  See Audler, 501 F.3d at 448.

[115]  TR at 25.

[116]  Id.

[117]  Audler, 501 F.3d at 448.

[118]  Id.  See TR at 25.

[119]  See Audler, 501 F.3d at 448.

the most analogous listing.[120] The Commissioner's Program Operations Manual System

("POMS") identifies Listing 11.03 as being closely analogous to chronic migraine headaches.[121]

Under Listing 11.03, a person is disabled if he or she has:

> nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by
> detailed description of a typical seizure pattern including all associated
> phenomena, occurring more frequently than once weekly in spite of at least 3
> months of prescribed treatment.  With alteration of awareness or loss of
> consciousness and transient postictal manifestations of unconventional behavior
> or significant interference with activity during the day.[122]

Defendant appears to agree the ALJ never cited Listing 11.03, but argues "the ALJ correctly

determined that Plaintiff did not satisfy all the specified criteria of any Listing," including Listing

11.03.[123]  Specifically, defendant argues:

> The ALJ found that Plaintiff did not identify any medical documentation that she
> experienced the disabling level of symptomatology described in this listing (Tr.
> 25).  He further noted that her medical treatment notes shows that she was fully
> oriented to time, place, and person (Tr. 25).  Thus she did not experience
> alteration of awareness or loss of consciousness as required by the Listing.[124]

---

[120]  Docket no. 16 at 10.  Again, defendant does not argue Listing 11.03 is not the most
analogous, and applicable, listing or that claimant's headaches should be analyzed pursuant to
any other specified listing.  Docket no. 17.

[121]  POMS § DI 24505.015(B)(7)(b).  Another Court in this division has discussed Listing
11.03 in connection with migraine headaches.  See Peterson v. Astrue, No. SA 06 CA 0275 RF,
2007 WL 1093890, at *6 (W.D. Tex. Apr. 9, 2007).  Additionally, plaintiff directs the Court to
SSA Q&A 09-036, which states "listing 11.03 (Epilepsy - nonconvulsive epilepsy) is still the
most analogous listing for considering medical equivalence."  Docket no. 16, exhibit 2.  The
Commissioner does not present any argument or authority that the SSA Q&A 09-036 is inactive.
Docket no. 17.  SSA Q&A 09-036 was also cited by the United States District Court for the
District of Colorado in Thomas v. Colvin, 69 F.Supp.3d 1174 (2014).

[122]  20 C.F.R. § 404, Subpart P, app. 1.

[123]  Docket no. 17 at 5.

[124]  Id.

Defendant's conclusion that the ALJ must have applied Listing 11.03 based on the ALJ's minimal comments (specifically, plaintiff's "medical records do[] not document any neurological deficits related to the headaches" and plaintiff's "medical treatment notes indicate she is fully oriented to time, place, and person"[125]) is a fallacy. Although the comments may indicate the ALJ considered Listing 11.03, the comments could also indicate the ALJ applied any number of other Listings. For example, references to neurological deficits and orientation could be made by an ALJ applying Listing 11.02—a listing defendant does not contend applies. Based on a review of the entire record, the Court cannot conclude the ALJ analyzed plaintiff's migraines in relation to the correct listing. Therefore, the ALJ's finding that plaintiff's migraine headaches were not medically equivalent to any listed impairment is not properly supported.[126] Accordingly, the Court is unable to determine that the ALJ's decision is based on substantial evidence.[127] In light

---

[125]  TR at 25.

[126]  Audler, 501 F.3d at 448.

[127]  Id. (citing Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir. 1986)). Defendant "submits that substantial evidence" supports the ALJ's decision, and argues "[e]ven if we assume for the sake of argument that the ALJ should have specifically cited Listing 11.03, any such omission cannot be harmful in light of the absence of any medical evidence that could satisfy Plaintiff's burden to present evidence of disabling limitations during the time period in question." Docket no. 17 at 5, 10. Defendant further asserts: "None of Plaintiff's medical sources found that she had debilitating headaches." Id. at 6. Plaintiff presents a "summary of the evidence" in support of her claims, which includes citations to her testimony and the record regarding plaintiff's migraines. Docket no. 16 at 2-7. The record also contains, for example, Dr. Slabisak and clinician David Ellis's notations regarding claimant's headaches. TR at 28, 30. Thus, the record does include some evidence of plaintiff's migraines. It is the ALJ's responsibility to determine whether there is sufficient evidence of migraine headaches and whether plaintiff's impairment medically equals Listing 11.03. 20 C.F.R. § 404.1520. "The court does not re-weigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000). Conflicts in the evidence are for the Commissioner to resolve. Id.

of this error, the case must be remanded so the Commissioner can evaluate claimant's impairments[128] and make the necessary findings when determining whether the claimant is disabled.[129]

## VII. CONCLUSION

In sum, because the ALJ's determination denying plaintiff disability benefits is unsupported by substantial evidence, plaintiff's motion to reverse and remand this case for

---

[128]   The record does not contain expert opinion evidence on the issue of medical equivalence to an impairment in the Listings.  Although "[t]he administrative law judge or Appeals Council is responsible for deciding the ultimate legal question whether a listing is met or equaled," "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight."  SSR 96-6p, 1996 WL 374180, at *3 (SSA July 2, 1996).  "The signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) or SSA-832-U5 or SSA-833-U5 (Cessation or Continuance of Disability or Blindness) ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review."  Id.  The Social Security Administration website appears to indicate SSA-831-U5 is analogous to SSA-831-U3. See DI 43520.070 Exhibits, Exhibit F–SSA-831-U5 "Disability Determination and Transmittal" (available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0443520070) (last accessed Mar. 1, 2016).  Form SSA-831-U3 is also titled "Disability Determination and Transmittal."  Id.  The record contains SSA-831-U3 forms completed by Leigh McCary, M.D. and Brian S. Harper, M.D.  TR 70, 83.  However, neither form addresses plaintiff's migraines or assesses whether plaintiff's complaints were medically equivalent to Listing 11.03, even though both Dr. McCary and Dr. Harper reference claimant's migraines and claimant's use of migraine medication.  TR at 67, 78.  Thus, the record does not contain "the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence."  SSR 96-6p, 1996 WL 374180, at *3.  See Thomas v. Colvin, 69 F.Supp.3d 1174, 1178-79 (2014).

[129]   Plaintiff also argues "the RFC finding fails to include related limitations which even arguably account for work-related limitations caused by headaches."  Docket no. 16 at 8. Because the Court has determined that remand is necessary, it will not address the issue.  But, if the ALJ reaches Step Four, the RFC findings should discuss any limitations relating to migraine headaches. 20 C.F.R. § 1520(4)(iv); 20 C.F.R. § 1545.

further administrative proceedings[130] is **GRANTED,** and this case is **REVERSED** and

**REMANDED**; the Clerk may enter judgment accordingly.

      **ORDERED, SIGNED** and **ENTERED** this 1st day of March, 2016.


                                   **PAMELA A. MATHY**
                                   **UNITED STATES MAGISTRATE JUDGE**

---

[130] Docket no. 16.

25